## WILLIAM C. SCUDDER, appellant,

*v.*

## ISAAC W. BUDD, respondent.

1. Complainant and defendant agreed to build houses for sale, the latter to advance the money and the former to contribute his skill and time as super-intendent, each to have half of the profits after sale.—*Held* that, independently of the question whether a partnership existed between the parties, complainant was entitled to maintain an action for an accounting.

2. Defendant had no right to charge complainant with the land used for building purposes at a greater price than its original cost, though it was bought with money furnished by him, and the title was taken in his name.

3. Complainant was not entitled to have the value of land bought for building purposes, but not used, brought into the account, since he had no interest in the land, but only in the profits arising from buildings erected thereon.

4. It appearing without contradiction that defendant was to furnish all the capital, but was not to be allowed interest till the completion of each particular building operation, he was not entitled to a credit for interest on a purchase-money mortgage given by him for land till the building thereon was completed.

On appeal by defendant from a decree in *Budd* v. *Scudder*, advised by Vice-Chancellor Green, whose conclusions are as follows :

The complainant, Isaac W. Budd, and defendant, William C. Scudder, in 1885, entered into a parol agreement contemplating the purchase of land in or near Camden, the erection of houses thereon, their sale when completed and an equal division of the net profits when disposed of.

The defendant is an uncle by marriage of the complainant, is a man of means and had been largely engaged in having houses built for sale, in which he had at times employed the complainant, who was a bricklayer and builder, as superintendent and overseer. For services so rendered, complainant was paid by defendant $40 a house. It was then agreed that they should "go in together," defendant to furnish all the money necessary

Scudder *v.* Budd.

and keep all accounts, complainant to contribute his skill and time and take entire management of the construction, and after the sale each was to have one-half of the net profits.

There were eight independent tracts purchased on which houses were erected, each operation, so called, being distinct, but in point of time overlapping one another, so that one would be in contemplation or under way before the completion of the prior one. There were one hundred and fifty-three houses in all built. The number in the operations varied from two to sixty-five.

· There was a partial settlement, it not being contended by the defendant to have been final, and he admits the complainant is entitled to an account for which the bill is filed. The contention arises as to the basis on which the account is to be taken, complainant contending that the relation of partners existed between them, which claim defendant resists.

In the consideration of the question we must not be misled by the acts and reasons which assume a partnership as between third parties and alleged copartners, for, while such relation is often presumed in law to exist as to strangers from the conduct of the parties, partnership *inter se* can only arise from contract, not necessarily one of partnership by express declaration, but when the agreement made embraces all the incidents of that relation. It may contain one or more of such incidents without creating the parties partners. Whether parties are partners as between themselves or not, seems, however, to be of little importance unless questions of jurisdiction or rights of property are involved in its solution. The complainant's compensation being a moiety of the net profits of the adventure, he is entitled, without question, to maintain his action for an accounting. *Alpaugh* v. *Wood, 18 Stew. Eq. 153.* While he has an interest in the net profits of the transaction, he cannot be held to have any interest in the property, for his contract rested in parol, the consideration money was paid by the defendant individually and the title was taken in the name of the defendant. The recovery of the complainant is not dependent on ascertaining the legal relation of the parties, but what he is entitled to under the terms

21

of the arrangement between himself and Captain Scudder. As is said by Lord-Justice Cotton in *Walker* v. *Hirsch, 27 Ch. Div. 460,* after stating the rule relating to acts which are held to establish a partnership as to third parties (at *p. 468*) : " Very different questions arise when we come to the question which exists here, whether the parties are, between themselves, part- ners. I have used the word ' partners,' but, really, what we have to consider when we are considering questions as between the parties themselves, and not as between strangers and one of the parties or all of them, is really this—what rights had the contract entered into in fact given one of the parties against the other? And that is the whole question when the matter arises as between those who are alleged to be—I will use now the ambiguous term—' partners.' Therefore, what we really have to consider is this—what, on the contract between the parties, are the rights which that contract has, *inter se,* given to one as against the other? "

To what credits and allowances are the complainant and defendant respectively entitled under the arrangement between them on the termination of their joint transactions?

The agreement, in general terms, was that Captain Scudder was to furnish the capital and Mr. Budd was to devote his time and skill, and the net profits, when realized, were to be equally divided. The full arrangement between them, however, is to be gathered from what was done under it, as well as from the evidence of what was said.

Captain Scudder paid the purchase-price of all the land and the cost of all the houses. He owed Mr. Budd, at the com- mencement of their joint transactions, $1,640.08, which he " left in " the operations, and Budd agreed " to leave all the money he could spare out of his business in the operation." This embraced a portion of the material furnished by his firm, as well as his unascertained profits in any operation which was completed. This money, $1,640.08, and the other " left in " by him, viz., his share of profits, was to be paid him when the whole opera- tion was finished. Scudder was to receive six per cent. interest on one-half of his investment in any one operation after it was

Scudder v. Budd.

completed until the houses were sold. If they were rented, Budd was to receive one-half of the rents collected. In some instances money was raised on notes signed by Budd, but these were all paid by Scudder. In one instance· money was raised by a mortgage of a tract by a person to whom Scudder transferred the title for that purpose. In some cases part of the purchase-money of land was secured by consideration-money mortgages. All payments, however, were eventually made by Captain Scudder.

The operations were, as a rule, carried on as follows: The attention of one or both of the parties being directed to a certain tract of land, they would get its dimensions and probable cost, and plot it out for the purpose of ascertaining how it could be most advantageously divided, and how many houses could be profitably erected upon it, and what they could probably be sold for. Then, in most of the cases, one or the other of them would see what was the lowest the land could be purchased for, and if they concluded that it promised a profitable operation, the land would be bought, and the title taken in the name of William C. Scudder, who would either pay or settle for the consideration money. The size, character and number of the houses having been settled, estimates would be obtained by the complainant for their construction, contracts for which, on receiving the approval of the defendant, would be awarded as he directed. The buildings would then be commenced and continued to completion under the direct supervision of the complainant, the materials and cost of labor being, either in the first place or ultimately, all paid by Captain Scudder.

When the houses in a particular operation were completed, the aggregate cost of the land occupied thereby and the buildings would be ascertained, and that amount divided by the number of houses erected on that particular tract, in which way the cost of each house was arrived at.

While buildings were being erected on any one tract, the account of expenses incident to that operation were charged appropriately to that transaction. After the entire expense had been apportioned to the different houses, an account was opened

with each house, and if any alterations or repairs or taxes or similar outlays were made with reference to a house, it was charged against it, and if it was rented an account of such rent was kept in its account.

When the houses were ready for sale an estimate was made as to what each had cost, and the price was then fixed by the complainant and defendant, at which it was to be disposed of, and on a sale being effected the title would be conveyed to the purchaser by Captain Scudder, who received the purchase-money.

By the agreement the defendant was to be repaid all his advances in each operation, with interest on one-half thereof from the completion of the houses built in it, and the complainant was to be paid what might be due him for materials furnished, and on the completion of the whole operation to be paid the amount due him from Captain Scudder, $1,640.08, and one-half of the net profits, including one-half of the rents received, defendant retaining the other half of the net profits.

No ascertainment of net profits was made at the end of the different operations, although a statement and partial settlement was once had.

On the basis of the agreement as thus stated the points in dispute, in my judgment, should be disposed of as follows :

*First.* The complainant claims that the defendant has charged, as the value of some one or more of the tracts improved in the operations, a greater price than he actually paid therefor, and that this is improper. There is no dispute, so far, at least, as the tract called the " Wister tract " is concerned, that the defendant has put on it an increased valuation over its cost to him. I do not think that this is in accord with the spirit of the agreement. The complainant was to devote his skill and time to the supervision of the work ; the defendant was to furnish all the money necessary to carry on and complete it. This embraced the purchase of land as well as material ; but, when purchased and used in the adventure, he was only to be repaid his advances in arriving at the net result of the operation. It cannot be supposed that the parties intended that the defendant might speculate to his coadventurer's disadvantage on his land purchases,

Scudder v. Budd.

any more than he could on the brick and lumber he bought and paid for. The enhanced value of the land was one of the elements of the complainant's compensation, for it contributed to increase the net profits. The fact that materials were purchased from the firm of which the complainant was a member, as well as from the firm of which the defendant was a member, does not militate against this position, for it is to be assumed that the purchases from both firms were at market rates, without any personal advantage or disadvantage to either complainant or defendant.

*Second.* One of the tracts purchased was not at all used for building purposes by the parties, and defendant either retained that part or has sold it. If I understand counsel correctly, complainant claims that the value of this unbuilt-upon land is to be taken into the account. I do not see on what principle such claim can be sustained. The relations of the parties to the title has been before stated, and complainant has no interest therein which can be recognized; it is only when the land had been used in an operation which had resulted in a profit that his interest attaches to anything tangible, and then to the profits. This court might protect him if his rights were jeopardized, but it would not be on the ground of his having an interest in the land.

*Third.* It is claimed that some of the land purchases were made by defendant by the payment of part of the purchase-money and giving a consideration mortgage for the balance, and that defendant has credited himself with interest moneys paid on such mortgages. If this is so, it is not correct. By the testimony of both parties, Captain Scudder was to furnish all the capital necessary, and was not to be allowed interest until the completion of the particular operation, and then Budd was to pay him six per cent. on one-half. Under this agreement, defendant must pay the interest on any purchase-money mortgage up to the completion of the building on the mortgaged tract.

*Fourth.* There was due complainant from the defendant when these transactions commenced, the sum of $1,640.08, which he

agreed to let remain in Captain Scudder's hands for use in the business.  This incident might have considerable weight in determining the question of partnership between the parties, though not a controlling one (*Walker* v. *Hirsch, supra*), but cannot be troublesome in these accounts.  Captain Scudder's bookkeeper has credited the amounts to Mr. Budd, and in stating the account there can be no objection to charging the defendant with the sum.

There should be a reference to a master to take and state an account .on the lines suggested, with leave to apply for further instructions if necessary.

*Messrs. Grey & Grey*, for the appellant.

*Mr. Henry M. Snyder, Jr.*, for the respondent.

PER CURIAM.

Decree affirmed, for the reasons given in the court of chancery..

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, GARRISON, LIPPINCOTT, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN,. KRUEGER—10.

*For reversal*—ABBETT, DIXON, SMITH—3.

---

HENRY PRICE et al., appellants,

*v.*

MATTHIAS PRICE, executor &c. of Daniel Price, deceased, respondent.

1. Testator devised and bequeathed to his wife all his real and personal estate for life, with power of disposition, but provided that if she died intestate "my property" be distributed according to the following bequests.  Then followed a devise of certain land, and several bequests, after which were direc-